NASCO EQUIPMENT COMPANY, Plaintiff v. RICHARD H. MASON,
DBA DICK MASON LUMBER COMPANY, Original Defendant;
DICK MASON LUMBER COMPANY, INC., Additional Defendant;
and FIRST-CITIZENS BANK & TRUST COMPANY, Third Party
Defendant

No. 41

(Filed 4 November 1976)

1. Appeal and Error § 6; Rules of Civil Procedure § 54— partial sum-
mary judgment — no finding of "no just reason for delay" — judgment
appealable

Order of the trial court granting a partial summary judgment
denied plaintiff a jury trial on the issue of its claim against defend-
ant bank and, in effect, determined the claim in favor of the bank;
thus, the order affected a substantial right of plaintiff and was appeal-
able under G.S. 1-277 and 7A-27, even in the absence of a finding by
the trial court pursuant to G.S. 1A-1, Rule 54(b) that there was "no
just reason for delay."

2. Rules of Civil Procedure § 54— interlocutory order — no finding of
"no just reason for delay" — statutory right of appeal

Where a party has a statutory right of appeal even from an
interlocutory order, Rule 54(b) will never bar appeal even though
the order appealed from fails to find "no just reason for delay."

3. Uniform Commercial Code § 27— when security interest attaches —
"rights in the collateral" — title not involved

"Rights in the collateral" as used in G.S. 25-9-204(1), the statute
setting forth when a security interest attaches, signifies not title, but
merely *some* rights which may be transferred to the secured party.

4. Uniform Commercial Code § 73— security interest in loadster — suffi-
ciency of evidence

In an action to recover possession of a loadster allegedly wrong-
fully possessed by defendant where defendant interpled a bank as
third-party defendant on the basis of an alleged security agreement
granting the bank a security interest in the loadster, the bank's affi-
davits and exhibits showed that the bank loaned defendant a specified
sum and took back a note secured by the loadster in question as col-
lateral, the security agreement was valid and enforceable under G.S.
25-9-203, defendant was in possession of the loadster prior to the
bank's security agreement, a financing statement covering the loadster
was filed with the office of the Secretary of State and with the county
Register of Deeds, and that no financing statement for plaintiff cover-
ing the loadster appeared of record; such evidence was sufficient to
show as a matter of law that the bank had a valid, enforceable and
perfected security interest in the loadster and that plaintiff had no
security interest with priority, and the trial court properly entered
summary judgment for the bank. G.S. 25-9-204(1); G.S. 25-9-401.

Nasco Equipment Co. v. Mason

5. **Uniform Commercial Code § 71— security interest in loadster — plaintiff's claim of consignment — failure to comply with statute**

    In an action to recover possession of a loadster allegedly wrongfully possessed by defendant where defendant interpled a bank as third-party defendant on the basis of an alleged security agreement granting the bank a security interest in the loadster, there was no genuine issue of material fact as to plaintiff's contention that the transaction between plaintiff and defendant was a consignment and that the bank therefore could not acquire a security interest in the loadster where (1) the evidence demonstrated that the transfer of the loadster to defendant was a sale and not a consignment, and (2) even if the transaction was a consignment, the bank would still prevail with its security interest, since plaintiff failed to establish its contention of compliance with G.S. 25-2-326(3)(b) by showing that defendant was generally known by his creditors to be substantially engaged in selling the goods of others.

6. **Uniform Commercial Code § 16— consignment — allegations of retention of title — dealer as "agent" of supplier**

    Plaintiff's allegations of title retention of a loadster delivered to defendant dealer were not of themselves sufficient to allow any inference of a consignment absent evidence of some commission for sales made by defendant or of defendant's right to return unsold goods; nor did the description of defendant as the "agent" of plaintiff in itself imply a consignment.

7. **Uniform Commercial Code § 16— rights of consignor against creditors of consignee — public notice**

    Since G.S. 25-2-326(3)(b) is designed to require *public* notice of the rights of the consignor before he will be allowed to defeat the interests of creditors of the consignee, the statute must be interpreted to give emphasis to the *general* notice requirement.

8. **Uniform Commercial Code § 16— passage of title upon delivery**

    Title to a loadster passed at the time of its delivery by plaintiff to defendant where there was no "explicit agreement" to the contrary within the purview of G.S. 25-2-401.

9. **Uniform Commercial Code § 73— retention of title by seller — possession of goods by debtor — necessity for written security agreement**

    Since the debtor acquired possession of goods, the seller would have been required to execute a written security agreement to render its security interest created by retention of title to the goods enforceable even as against the debtor itself under G.S. 25-9-203; therefore, the retention of title by the seller would give the seller no rights as against a bank which perfected a security interest in the goods after their delivery to the debtor.

ON petition to review pursuant to General Statute 7A-31 the decision of the Court of Appeals, *Hedrick, J.*, reported without opinion in 29 N.C. App. 185, 223 S.E. 2d 411 (1976), dismissing under Rule 54(b) the plaintiff's appeal from summary

judgment entered by the trial court in favor of third-party defendant First-Citizens Bank & Trust Company.

*Basil L. Whitener and Anne M. Lamm, attorneys for plaintiff appellant.*

*Hollowell, Stott & Hollowell by James C. Windham, Jr., attorneys for defendant appellee.*

EXUM, Justice.

The Court of Appeals dismissed plaintiff's appeal on the ground that the judgment appealed from "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" without determining that there is "no just reason for delay" as required by General Statute 1A-1, Rule 54(b). Since plaintiff asserted a right of appeal under General Statutes 1-277 and 7A-27, the first issue in the case is whether a partial summary judgment which "affects a substantial right" but which fails to satisfy certain requirements for appeal under Rule 54(b) is nevertheless appealable. We hold that it is.

On the merits the contest before us is between competing creditors of Mason Lumber Company, both of whom claim an interest in a chattel which had been delivered to Mason, a dealer, in the ordinary course of business by its supplier, Nasco Equipment Company. The creditors are the plaintiff Nasco and the third-party defendant First-Citizens Bank. The second issue thus presented is whether, upon the factual showing made by the parties, the bank is entitled to summary judgment in its favor. We hold that it is.

This action began with a complaint alleging debts owed plaintiff Nasco by defendant Mason for merchandise delivered. In addition, the complaint alleged that on April 12, 1973, defendant took into possession one Nasco Loadster, Serial No. 554, Model GF8, with 24-foot mast, and that the loadster was plaintiff's property and was being wrongfully possessed by Mason. Plaintiff sought to recover the possession of the loadster or in the alternative its value. Mason answered, denying Nasco's right to possession, counterclaiming for certain commissions owed him by plaintiff and interpleading First-Citizens as third-party defendant on the basis of an alleged security agreement granting the bank a security interest in the loadster. Mason's answer also alleged that Nasco conducted the business described

in the complaint with Dick Mason Lumber Company, Inc., a corporation wholly owned by Mason. Mason prayed that the corporation "be named as the proper party defendant." By order the corporation was made a party defendant and claims against it were asserted in later pleadings by Nasco. Mason, individually, and his corporation will be referred to herein simply as "Mason." First-Citizens answered, alleging a perfected security interest in the loadster and denying Nasco's right to possess. In its response, Nasco contended that Mason had no power to create a security interest in the loadster. On the bank's motion the trial court granted summary judgment for First-Citizens.

[1]  The order granting summary judgment denies plaintiff a jury trial on the issue of its claim against the bank and, in effect, determines the claim in favor of the bank. Thus the order affects a substantial right and is appealable under General Statutes 1-277 and 7A-27. Rule 54(b) was designed to expand opportunities for appellate review to those circumstances where no other rule or statute allows appeal and, absent the requisite determination by the trial judge that there is "no just reason for delay," an appeal of the order would be barred because of lack of finality. Rule 54(b) allows the trial court to render a final, though partial, adjudication in these circumstances.

[2]  Thus, where a party has a statutory right of appeal even from an interlocutory order, Rule 54(b) will never bar appeal even though the order appealed from fails to find "no just reason for delay." This question was recently determined by this Court in *Oestreicher v. Stores,* 290 N.C. 118, 225 S.E. 2d 797 (1976). *Oestreicher,* which held a summary judgment on the issue of punitive damages to be appealable, controls in this case. *See also Newton v. Insurance Company,* 291 N.C. 105, 229 S.E. 2d 297 (1976), decided this day. For these reasons, the Court of Appeals erred in dismissing plaintiff's appeal.

We therefore turn to a consideration of the merits of plaintiff's contention that summary judgment was improperly entered in the trial court. Rule 56(c) provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that any party is entitled to judgment as a matter of law."

The nature and purpose of the summary judgment rule becomes more apparent upon a consideration of Rule 56(e), which provides, *inter alia:*

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." (Emphasis added.)

This Court has previously observed that the purpose of the rule is to eliminate formal trials where only questions of law are involved. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971). The procedure under Rule 56 is designed to allow a "preview" or "forecast" of the proof of the parties in order to determine whether a jury trial is necessary. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975). *See* Louis, "Federal Summary Judgment Doctrine: A Critical Analysis," 83 Yale L.J. 745 (1974). Thus a motion under Rule 56 allows the court to "pierce the pleadings" to determine whether any genuine factual controversy exists. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972).

Since the "heart of the summary judgment procedure and the test applied in reviewing . . . a trial court's ruling" on a Rule 56 motion is the finding that there is "no genuine issue as to any material fact," *Railway Co. v. Werner Industries,* 286 N.C. 89, 95, 209 S.E. 2d 734, 737 (1974); 10 Wright & Miller, Federal Practice and Procedure: Civil §§ 2716 and 2725 (1973), it is necessary to resolve the significance of the term "material fact." We said in *Railway Co. v. Werner Industries, supra* at 95, 209 S.E. 2d at 737:

> " 'The determination of what constitutes a "genuine issue as to any material fact" is often difficult. It has been said that an issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail. *A question of fact which is immaterial does not preclude summary judgment.'* " (Emphasis added.)

It is apparent that one of the situations in which the use of Rule 56 would be appropriate is that in which a "material fact" is alleged and denied by the parties but in which the preview of the proof reveals the existence or nonexistence of that fact to be indisputable. In other words, although the allegations of the pleadings are sufficient to withstand a motion for dismissal under Rule 12(b)(6), the party against whom summary judgment is rendered is wholly unable to support his allegations with facts.

To avoid the possibility of any party's manufacturing "facts" to meet a motion for summary judgment, Rule 56(e) requires that: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Since, on a motion for summary judgment, the court scrutinizes closely the supporting papers of the movant, while treating indulgently those of the opposing party, accepting as true all facts duly asserted by the responding party, *Railway Co. v. Werner Industries, supra,* genuine factual controversies are reserved for the jury. Of course, any party with insufficient access to necessary facts to meet a motion for summary judgment is protected by compliance with Rule 56(f) which provides:

> *"When affidavits are unavailable.*—Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

The Court has recognized the peculiar difficulties posed by a Rule 56 motion supported by affidavits of an interested party where no direct challenge to their truth or credibility is made by the opponent. *Taylor v. City of Raleigh,* 290 N.C. 608, 227 S.E. 2d 576 (1976); *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976).

[4] In this case the record to be considered consists of the pleadings, answers to interrogatories, affidavits and exhibits attached. First-Citizens Bank submitted two affidavits in sup-

port of its motion. The first is that of Betty Morris, Deputy Registrar for the Gaston County Register of Deeds. Her affidavit establishes that:

> "On October 24, 1973, a financing statement was filed in the office of the Register of Deeds for Gaston County by First-Citizens Bank & Trust Company as secured party against Dick Mason Lumber Co., Inc. as debtor; that said financing statement is duly recorded in File Number 7111 and names and describes as collateral, '1973 NASCO GF 8000 Lb. Fork Lift S#554'; that there does not appear of record a financing statement for Nasco Equipment Company covering the above-described collateral."

A copy of the financing statement was attached and appears to be in proper form. The affiant is not a party, nor does any issue as to her credibility appear in the record.

The second affidavit submitted by the bank is that of Ronald O. Turlington, Assistant Vice President of First-Citizens at its Gastonia office. This affidavit, unopposed by any factual assertions in the record, establishes that First-Citizens loaned $8,350.00 to the defendant Dick Mason Lumber Co., Inc., taking back a note secured by the loadster in question as collateral. The security agreement (a copy of which was attached as an exhibit) appears valid and enforceable under General Statute 25-9-203. The affidavit further establishes that a financing statement covering the loadster was filed with the office of the Secretary of State of North Carolina in Raleigh and with the Register of Deeds of Gaston County. Although Turlington is an employee of an interested party, his averments are unchallenged by plaintiff and the only doubts as to his credibility are "latent" doubts. *See Kidd v. Early, supra* at 370, 222 S.E. 2d at 410. Moreover the affidavit is supported by documentary evidence as to the existence and nature of the security agreement, and by the affidavit of Betty Morris as to the Gastonia filing.

[3]  General Statute 25-9-204(1) provides that a security interest attaches when "there is agreement that it attach and value is given and the debtor has rights in the collateral." "Rights in the collateral" is a term signifying not title, but merely *some* rights which may be transferred to the secured party. *See* 1 Bender's Uniform Commercial Code Service, Secured Transactions § 4.06[1] (1976). A debtor may acquire "rights in the collateral" even where the collateral consists of

consigned goods. J. White and R. Summers, Uniform Commercial Code, § 23-4 at 795 (1972). The bank's affidavits and exhibits show agreement and value given. The possession of the loadster by Mason prior to the bank's security agreement is established by plaintiff's own verified complaint. *Schoolfield v. Collins*, 281 N.C. 604, 189 S.E. 2d 208 (1972). There is thus sufficient evidence in the record unencumbered by any question of credibility to establish that the bank had a security interest in the loadster valid and enforceable against the debtor Mason. Moreover, the bank's security interest was properly perfected by filing pursuant to General Statute 25-9-401.

Although Nasco had averred in its "Answer to [First-Citizens'] Motion to Intervene" that the bank's "purported filing" was not in compliance with the Uniform Commercial Code and was insufficient to give the bank rights superior to those of the plaintiff, Rule 56(e) clearly precludes any party from prevailing against a motion for summary judgment through reliance on such conclusory allegations unsupported by facts.

[4]   In this case the bank has shown that it has a valid, enforceable and perfected security interest in the loadster. Under the Uniform Commercial Code the bank must prevail unless plaintiff shows itself to have a security interest *with priority* under Article 9 of the Code or a non-security type consignment in compliance with General Statute 25-2-326(3). That the plaintiff might have any perfected security interest in the loadster is thoroughly negated by Betty Morris' affidavit showing no financing statement of record for Nasco. No factual showing to the contrary is made by plaintiff. Instead, plaintiff relies on (1) allegations of a reservation of title in plaintiff; (2) allegations that the bank "knew or should have known" that the loadster did not belong to Mason. Plaintiff alleges, in essence, that Mason had no title to the loadster and the bank knew it. Therefore the bank cannot have perfected any security interest in the loadster as against the plaintiff. No facts are produced to support these allegations. Moreover, even if they were resolved in plaintiff's favor, the allowable inferences would be insufficient to preclude a summary judgment for the bank. In other words, even if Nasco's allegations as to title and the bank's knowledge were taken as "fact," they are not "material fact" within the meaning of Rule 56 as defined in *Railway Co. v. Werner Industries, supra.*

---

---

It seems likely that plaintiff has mistakenly relied on the traditional North Carolina rule that the mere entrustment to a bailee by an owner of a chattel would not preclude the owner from recovering possession as against the mortgagee of the bailee since the bailee had no title and the mortgagee did not occupy the position of a *bona fide* purchaser. The exception to this rule lay in circumstances where the owner clothed the mortgagor with the indicia of ownership. *Wilson v. Finance Co.,* 239 N.C. 349, 79 S.E. 2d 908 (1954). Plaintiff, in essence, is relying on our traditional concepts of title in order to resolve what is essentially a security interest problem, the answer to which must be found in the Uniform Commercial Code. The Code has significantly modified our traditional rules in this area. "The most basic departure from previous law which is found in the Uniform Commercial Code is the abandonment of the concept of title as a tool for resolving sales problems." *Insurance Co. v. Hayes,* 276 N.C. 620, 632, 174 S.E. 2d 511, 518 (1970).

[5] The plaintiff contends in substance that the record is sufficient to allow an inference that the transaction between Nasco and Mason was a consignment. To this contention there are two answers. First, everything in this record demonstrates that the transaction was a sale and not a consignment. Second, even if it was a consignment, the bank must still prevail because plaintiff has not complied with General Statute 25-2-326.

[6]  "[T]he hallmark of the consignment . . . is the absence of an absolute obligation on the part of the consignee to pay for the goods." Hawkland, "Consignment Selling Under the Uniform Commercial Code," 67 Commercial L.J. 146 (1962). According to the "Dealer Contract" between Nasco and Mason, offered as an exhibit, Mason as dealer would receive a 25 percent discount off list price of goods delivered to it by Nasco with all invoices payable within ten days and a one percent per month charge to be added when Mason's payment was late. Although plaintiff alleges in its unverified "Reply to Amended Answer" that Mason "dealt with plaintiff on an open account basis on merchandise other than the Nasco loadster mentioned in the Complaint" and that Mason "never at any time purchased" the loadster, it failed to support these conclusory allegations with any factual assertions. These allegations, moreover, of title retention even if true are not sufficient of themselves to allow any inference of a consignment, absent evidence of some commission for sales made by Mason or of Mason's right to return unsold goods. Nor does

the "mere fact that the seller has not been paid or is selling on credit . . . give rise to any presumption or implication that the transaction is to be a secured transaction or that title is to be retained by the vendor until payment has been made." 2 R. Anderson, Uniform Commercial Code, § 2-401:14 (2d ed. 1971). The description in the affidavit of C. R. Kennett, Vice President and Sales Manager of Nasco, of Mason as "agent" of Nasco does not in itself imply a consignment.

Even if a consignment were intended by Nasco and Mason, the bank must still prevail under the Code. If the consignment were intended as security, the consignor must comply with the filing requirements of Article 9 to prevail. G.S. 25-1-201(37). This was not done. If the consignment is not for security, reservation of title is not a security interest, but the consignor must nevertheless comply with the requirements of General Statute 25-2-326 in order to defeat any creditor of the consignee. G.S. 25-1-201(37). General Statute 25-2-326(3) allows a consignor to prevail by (a) complying with "an applicable law" by erecting a sign, (b) establishing "that the person [consignee] conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others," or (c) filing under Article 9.

[7] Plaintiff rests its hopes of recovery on an argument that the record shows its compliance with subsection (b) above. The only evidence in the record, however, to support this argument is Mason's answers to interrogatories describing his business as "Lumber business and fork lift sales." Plaintiff apparently relies on the absence of evidence of Lumber Company's *manufacturing* loadsters to support its position. The mere lack of manufacturing does not establish that all loadsters sold by Mason were "the goods of others." Nor is there anything in the record to support the real test to be met under Section 25-2-326(3)(b) : that the consignor show general knowledge by creditors of the consignee that the consignee is substantially engaged in selling the goods of others. Since the statute is designed to require *public* notice of the rights of the consignor before he will be allowed to defeat the interests of creditors of the consignee, the statute must be interpreted to give emphasis to the *general* notice requirement. The purpose of the section is to protect "innocent creditors from deception by ostensible ownership." "Commercial Transactions: UCC Section 2-326 and Creditors Rights to Consigned Goods," 65 Columbia L. Rev. 547 (1965).

*See General Electric Co. v. Pettingell Supply Co.,* 199 N.E. 2d 326 (Mass. 1964).

Plaintiff's reliance on *In re Mincow Bag Co.,* 29 App. Div. 2d 400, 288 N.Y.S. 2d 364 (1st Dep't 1968) is misplaced since in that case the majority held Section 2-326 of the Code to be inapplicable on the basis of the consignee's failure to "maintain a place of business at which he deals in goods of the kind involved." In this case Mason clearly has a place of business dealing in fork lifts. Moreover, a consideration of the facts in *Mincow Bag,* which apparently involved a true consignment, lends support to our conclusion that no consignment exists at all in the case at bar.

[8]  Under the sale theory of this transaction, title likewise offers no solution to plaintiff's predicament. General Statute 25-2-401 provides that, "unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." There is no "explicit agreement" even alleged in the case at bar. Thus title passed by law in this case to Mason long before any security interest was created in favor of the bank.

[9]  Even if title had been retained by Nasco, however, General Statute 25-1-201(37) provides: "The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of a 'security interest.' " Under General Statute 25-9-113, such a security interest is subject to the provisions of Article 9, "except . . . to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods." Since the debtor, Mason, did acquire possession of the goods, Nasco should have had executed a written security agreement to render its security interest (created by the retention of title) enforceable even as against the debtor itself under General Statute 25-9-203. *See* 1 Bender's Uniform Commercial Code Service, Secured Transactions, § 4.07[2] at 314.2-314.3 (1976). The retention of title in these circumstances gives Nasco no rights as against First-Citizens.

In summary, plaintiff has failed to support its contentions by the factual showing required to oppose First-Citizens' affidavits under Rule 56. Moreover, even if the issues of title retention and consignment were resolved in plaintiff's favor, the bank

must still prevail. There are, therefore, no issues of "material fact" to be found in this record, and the trial court was eminently correct in granting summary judgment for First-Citizens.

The decision of the Court of Appeals dismissing plaintiff's appeal is reversed. The order of the trial court granting summary judgment for First-Citizens Bank & Trust Company is affirmed.